IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | CHAPTER 7 |
| LAMBERT OIL COMPANY, ) | |
| INC. ) | |
| ) | CASE NO. 03-01183-WSA |

| | |
|---|---|
| WILLIAM E. CALLAHAN, JR., ) | |
| TRUSTEE ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adversary Proceeding No. 04-7135 |
| ) | |
| MOUNTAIN EMPIRE OIL COMPANY, ) | |
| INC., et al. ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM DECISION

This adversary proceeding is concerned with the attempt of William E. Callahan, Jr., Trustee in bankruptcy (the Trustee) for Lambert Oil Company, Inc. (Lambert Oil), to recover from Mountain Empire Oil Company, Inc. (MEO) and/or Quality Properties, L.P. (Quality) a sum of money representing the fair rental value of their alleged occupancy and use of two convenience store properties located in Bristol, Virginia and Jonesborough, Tennessee which he sold during the administration of Lambert Oil's bankruptcy estate. Such period of occupancy and use is alleged to have begun prior to the bankruptcy filing and continued until the date such properties were conveyed by the Trustee on or about June 29, 2004. The Bristol store was sold and conveyed to Quality and the Jonesborough store was conveyed, at Quality's request, to S & T

Investment Company, LLC (S&T). MEO, Quality and S&T are under common ownership with MEO being the operating company and Quality and S&T being the title owning entities. These entities are commonly represented in this proceeding and have filed a Motion for Summary Judgment which takes the position that any unliquidated and unresolved claims for the pre-sale use and enjoyment of the premises were not reserved by the Trustee in the deeds he prepared and tendered to the purchasers and therefore passed to the new owners as incidents of the ownership of the subject real estate. It is upon this rationale that the defendants have filed their Motion, which, as one would expect, is strongly opposed by the Trustee. For the reasons stated below, the Court will deny such Motion.

## FINDINGS OF FACT

Because the issue before the Court is the defendants' Motion for Summary Judgment, the facts will be stated in the light most favorable to the Trustee, the non-moving party.

Lambert Oil, the Debtor, filed a chapter 11 petition in this Court on March 24, 2003. It operated as a debtor-in-possession until the case was converted to one under Chapter 7 on September 16, 2003. After this conversion Mr. Callahan was appointed as Lambert Oil's trustee in bankruptcy.

In the schedules filed in this case the Debtor indicated ownership of three separate properties, consisting of the Bristol and Jonesborough convenience stores and an office/warehouse facility located in Abingdon, Virginia. In addition to these properties which the Debtor owned, it also held leases from various owners for five other convenience stores located

in several Virginia locations. In addition to the properties themselves, the Debtor also listed in Schedule B claims for unpaid rent against Mountain Empire Oil for these two stores, $31,499.13 for the Bristol store and $64,430.10 for the Jonesborough store. In Schedule G, which requires a listing of all executory contracts and unexpired leases, Lambert Oil listed various leases for certain of its properties and equipment but made no reference to any contracts or leases for the two stores in question here.

A contractual relationship was established between Lambert Oil and Quality with respect to these two stores in dispute in April of 2002 by means of an undated "Contract of Purchase and Sale" prepared by Quality and MEO's counsel, Mr. Harry Curtis Williams. This contract was signed on behalf of Lambert Oil on April 8, 2002 by its president, Mr. Nick Lambert, and on behalf of Quality on the following date by its general partner, Mr. Warren K. Broyles. Although the contract states that MEO was also a party, in fact MEO did not execute the contract and the Court has not observed any obligations purportedly imposed upon such company by its provisions. MEO did furnish, however, the $5,000 deposit called for in the contract. While this contract is nearly sixteen pages in length, its provisions may be briefly summarized. Lambert agreed to sell and Quality agreed to purchase the Bristol and Jonesborough stores based on "an assumed purchase price of $1,900,000."[1] The exact purchase price, however, was to be the sum of the following: $5,000 deposit; $195,000, less certain credits, to be paid at closing; and Quality's assumption of the unpaid balances of the two mortgage loans encumbering the titles to such properties as well as an equipment lease for carwash equipment located at the Jonesborough location. Closing was to occur within ninety

---

[1] Paragraph 36 of Contract.

days of Lambert Oil's execution of the Contract. The Contract further provided that Quality would "take over operation" of the two stores on April 16 (Jonesborough) and 23 (Bristol), 2002, respectively, and would pay Lambert Oil "daily rent" equal to 1/365th of the mortgage and equipment lease payments pending closing. Such payments were to be credited back dollar-for-dollar against the $195,000 amount otherwise due at closing. Pending closing Lambert Oil was obliged to keep making the mortgage and equipment lease payments so that such obligations would be current on the closing date. If it failed to do so, Quality was authorized to deduct any amounts necessary to bring these obligations current at closing from the $195,000 cash balance of the purchase price due at closing. Because all of these payments were to be credited back against the $195,000 balance due at closing, Lambert Oil would benefit from a sooner closing while Quality would benefit from a delayed closing as the amount due in cash at closing was reduced not just by the principal portions of the mortgage and equipment lease payments, but also by their interest components. Such an arrangement seems almost to invite dispute and resulting delay in the conclusion of the contracted sales. Whether for that reason or others is not revealed by the evidence before the Court, but no closing occurred within ninety days of April 8, 2002 or at any time thereafter prior to the Trustee's sale of such properties on June 29, 2004. The parties agree that Quality or MEO did make the agreed rent payment until the end of September, 2002, but thereafter ceased doing so, purportedly because Lambert Oil had stopped making the payments due to the mortgagees and equipment lease lessor. Nevertheless, Quality, or MEO as the actual operating company, remained in possession of both stores and continued to operate them, retaining all revenues generated as a result. This state of affairs continued not only until the filing of the bankruptcy case, but also thereafter until the closing of the Trustee's sales

4

of these two stores pursuant to this Court's approval. Although the 2002 Contract was quite comprehensive in its scope, it failed to provide for the consequences of what actually occurred, which was that the closing did not occur but the purchaser remained in possession and enjoyment of the two properties, used them to conduct business, but did not make any payments either to the owner or the mortgagees. The evidence before the Court does not reveal why the Contract or its lease provision was not mentioned in Schedule G or whether either party declared a default by the other party or a termination of the agreement pursuant to its terms prior to the bankruptcy filing.

During the chapter 11 phase of this case a new "Contract of Purchase and Sale", again drafted by Mr. Williams, was entered into between Lambert Oil as debtor-in-possession and Quality. Under this contract, much shorter than the prior one, the two stores and associated personalty were to be sold to Quality for an agreed price of $1,509,200 to be paid in cash, subject to two agreed credits aggregating $9,200. This contract was signed by Lambert Oil, Quality and MEO on August 4, 2003, but the case was converted to chapter 7 before approval of such contract was obtained in this Court and it never closed.

The evidence does indicate that after the Trustee's appointment in the case he entered into negotiations with Quality and/or MEO designed to accomplish two objectives: resolve the bankruptcy estate's claim for rent for the two stores and effect the sale of such stores to one or the other of such entities. During these negotiations the Trustee and counsel for Quality and MEO discussed proposed contractual language which would have resolved not only the claims for use and occupancy of the stores but also their sale prices. Unfortunately, such negotiations were unsuccessful but MEO remained in possession and control of the stores and

continued to operate them without any payment for such benefit. The Trustee did not make any demand upon Quality or MEO to surrender possession of either of such stores. He did, however, pursue other possible purchasers for them and was able to reach an agreement with Rogers Petroleum, Inc. to sell them for $1,750,000 on the condition that bidding would be open to other possible purchasers. This development finally provided some incentive to MEO and Quality to change the status quo and as a result the Trustee and Quality entered into an agreement of sale and purchase of the two stores for a combined purchase price of $1,850,000. At this point the Trustee represents that the prior language which would have compromised the bankruptcy estate's claim for rent against Quality and MEO was taken off the table.

Prior to the sale of the two stores in question the Trustee took action to obtain from the Court an extension of the time during which he was obliged either to assume or reject any unexpired leases or executory contracts to which Lambert Oil was a party, being those contracts and leases listed in Schedule G of the petition. At no time did he represent or claim the existence of any executory contract or unexpired lease with respect to the Debtor's pre-petition agreement with Quality.

The Trustee filed a Complaint against MEO and Quality on November 30, 2004 seeking that MEO or Quality pay the fair market value of their possession, occupancy, and use of the Bristol and Jonesborough stores from October 1, 2002 through June 28, 2004. The Trustee requests that the Court enter judgment for $439,689.36, with interest, plus costs and attorneys fees. Both MEO and Quality filed an Answer and Motion to Dismiss on January 14, 2005 asserting that because the right to collect rent is a property right, incident to the fee simple in the real property, if anyone is entitled to recovery, Quality, as owner, is entitled to recovery of rents

that are due. On August 18, 2005, the Trustee filed a Motion for Leave to Amend Complaint and to Join a Party Defendant. On September 13, 2005, an Order was entered granting the Trustee's motion. The Trustee filed an Amended Complaint on September 27, 2005 against MEO, Quality and S&T adding an additional count seeking reformation of the Trustee's deeds to the stores to expressly exclude the estate's causes of action. The Amended Complaint asserts that the Trustee executed and delivered a deed conveying the Bristol store to Quality and executed and delivered a deed conveying the Jonesborough store to S&T. The Trustee alleges that each deed was executed pursuant to an Asset Purchase Agreement, as amended, and pursuant to the order entered by the Court on June 10, 2004 approving the sale of the property. The Trustee further alleges that the first amendment was executed after extensive discussions by which the parties agreed that the estate's cause of action to recover the fair market value of Quality's and MEO's possession and use of the stores would be excluded from assets purchased by Quality. To the extent that the Court determines that the Trustee's deeds conveyed the estate's causes of action to them, the Trustee asserts that such conveyance was contrary to the intentions of the parties and a mistake of fact. The Trustee requests the Court to reform each of the deeds to include a provision that evidences the parties' intent and that expressly excludes the estate's causes of action to recover the fair market value of Quality's and MEO's possession and use of the stores. On October 24, 2005, all three defendants filed an Answer and Motion to Dismiss the amended complaint asserting that the additional allegations regarding reformation involved either an interpretation of documents or a description of the legal significance or import of documents that is a question of law and required no admission or denial.

CONCLUSIONS OF LAW

This Court has jurisdiction of this proceeding by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984. Proceedings to recover property of the bankruptcy estate are "core" bankruptcy proceedings pursuant to 28 U.S.C. § 157(b)(2)(A), (E), and (O).

A motion for summary judgment made pursuant to Federal Rule of Civil Procedure 56 is applicable to adversary proceedings in bankruptcy by virtue of Bankruptcy Rule 7056. Rule 56 provides that such a motion can be granted only if the court is persuaded by the evidence produced before it "that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Decisions setting forth the principles governing the determination of motions for summary judgment are simply elaborations upon, and application of, this general language to specific cases. Counsel for the Trustee has accurately summarized the principles governing determination of a motion for summary judgment and the Court will adopt that statement, hereafter immediately following, as a part of this opinion.

> The standards under which courts consider motions for summary judgment are well established. Upon a motion for summary judgment, a court must view the facts, and any inferences to be drawn from those facts, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986); Nguyen v. CNA Corp., 44 F.3d 234, 236-37 (4th Cir. 1995). In other words, the non-moving party is entitled to have "the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, [and] all internal conflicts in it resolved favorably to him." Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir. 1990) (quoting Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)); see also Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2nd Cir. 1992)(court is required to resolve all ambiguities and draw all inferences in favor of the non-moving party).

> Summary judgment is only proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Summary judgment should not be granted "unless the entire record shows a right to judgment with such clarity as to leave no room for controversy." Phoenix Sav. & Loan, Inc. v. Aetna Cas. & Sur. Co., 381 F.2d 245, 249 (4th Cir. 1967).
>
> The Defendants, as the parties seeking summary judgment, have the initial burden of showing the absence of a genuine issue as to any material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); 6 J. Moore, Federal Practice para 56.15[3] (2d ed. 1966)). To that end, the Defendants must show that the facts upon which the Plaintiff relies in support of its allegations are not susceptible of the interpretation which the Plaintiff seeks to give, even when viewing all of the evidence in the light most favorable to Plaintiff. See First National Bank v. Cities Service, 391 U.S. 253, 289 (1968) (holding that Rule 56 (e) required a non-moving party to produce evidence in support of its allegations only if the moving party "conclusively showed that the facts upon which [the non-moving party] relied to support his allegation were not susceptible of the interpretation which he sought to give them").
>
> When resolution of issues of fact depends upon a determination of credibility, summary judgment is improper. See, Davis v. Zahradnick, 600 F.2d 458, 460 (4th Cir. 1979).

Plf's Brief 10 - 12. Of course this discussion is on behalf of the non-moving party to such motions, and the perspective of the moving party is appropriately outlined in the brief filed by the defendants as follows:

> On a motion for summary judgment, the burden rests with the moving party to show that there exists no genuine issue of material fact and that it is entitled to judgment as a matter of law. Rule 7056(c), *Federal Rule Bankruptcy Procedure*. When the facts of a case are undisputed, summary judgment is appropriate. *Featsent v. Dity* [sic] *of Youngstown*, 70 F.3d 900 (6th Cir. 1995), *Lincoln v.*

9

> *Reksten Management*, 354 F.3d 262 (4th Cir., 2003). To meet this burden, the defendants must establish the absence of any evidence to support the plaintiff's claims under the legal theories which are set forth in the Complaint. *See Celotex Corp. v. Catrell,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).
>
> The moving party has the burden of establishing that there are no genuine issues of material fact as to each and every element of a claim and that such party is entitled to judgment as a matter of law. *Celotex v. Catrell; Moore v. Phillip Morris Co., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). When the moving party meets this burden, the burden then shifts to the non-moving party to show specific facts which reflect there is a genuine issue for trial. *Sylvia Development Corp. v. Calvert County, MD.*, 48 F.3d 810 (4th Cir., 1995); *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 608-09 (6th Cir 1992), *cert. Denied*, 506 U.S. 1054 (1993). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. The factual dispute must be genuine. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Street v. J.C. Bradford & Co*, 886 F.2d 1472 (6th Cir. 1989). The non-moving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Estate of Kimmel* [sic] *through Kimmell v. Seven Up Bottling*, 993 F.2d 410 (4th Cir, 1993); *Lanning Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994); *See also Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-06 (6th Cir. 1992) (courts do not have the responsibility, *sua sponte*, to search the record for genuine issues of material fact). If the non-moving party failed to meet a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552-53.

Defs' Brief 3-4.

As to Count 1 of the Amended Complaint, the Defendants argue that (1) there was no express or implied agreement entitling the Trustee to be paid rent for that period; (2) any such agreement would be contrary to the provisions of the Court's Order granting the motion to sell; and (3) when the Trustee sold the stores free and clear of all liens, claims, rights and

interests, he conveyed the rights and interests he seeks to assert in this adversary proceeding. The Defendants assert that they are entitled to summary judgment dismissing Count 2 seeking reformation of the deeds from the Trustee to S&T and to Quality for the Jonesborough and Bristol stores to expressly exclude the Trustee's claim for rent for the period prior to June 29, 2004. The Defendants argue that there was no express agreement that the Trustee reserved the right to be paid the rent for that period, nor did the Court's Order granting the Trustee's Motion for Authority to sell Free and Clear of Liens entered on June 10, 2004 make provision for the reservation of such right thereby obviating the possibility that a mistake of fact could occur. If summary judgment is not granted, the Defendants request that the Court stay the proceedings and require the Trustee to make a determination as to the security interest of FMAC as a condition to the continued pursuit of this claim.

The essence of the defendants' arguments supporting their Motion for Summary Judgment as to Count I of the Amended Complaint, as clarified by counsel at the hearing in response to certain questions posed by the Court, can be distilled into just a few clauses. None of the defendants ever reached an agreement with either Lambert Oil as debtor-in-possession or the Trustee upon the term of any lease or the amount of rent to be paid; if no agreement is made otherwise as to when rent is payable for use and occupancy of property, it is payable at the end of the term; because the term of occupancy did not end prior to the Trustee's sale of the property, no rent due had "accrued" prior to the sale; unless otherwise expressly agreed, the right to collect accrued rents remains with the seller of property but the right to collect non-accrued rents passes to the purchaser; therefore no rent having been agreed upon, no obligation to pay rent had accrued and any right to collect the same, in the absence of any express reservation, passed to the

11

buyer of the properties. Both sides seem to agree that the right to collect "accrued" rents remained with the Trustee unless expressly assigned, which clearly did not occur here, and therefore the defendants' entire supposition can stand only if no claim for the value of the use and occupancy of the properties had "accrued" prior to the Trustee's sale of the two stores. Counsel for the defendants conceded at the hearing that he had been unable to find any case clearly and specifically upholding his position, but that nevertheless it constituted a correct application of the governing legal principles to the facts of this case.

The defendants' Brief in support of their Motion for Summary Judgment asserts, "Accrued rent means and signifies rent that is due and payable. *Estate of Caldwell v. Woods,* 1989 WL 11738 (Tenn. App., Feb. 15, 1989); *Prudential Ins. Co. of America v. Buss,* 37 NW 2d 300 (Iowa, 1949)." Defs' Brief 17. Furthermore, counsel cites 49 *Am Jur 2d, Landlord and Tenant* § 713 in support of the statement, "Where lease has no time of payment, the rent does not become due and payable until the end of the term." *Id.* at 16. Recourse to that treatise indicates, however, that the actual statement it contains is much more specific in nature than the generalized version counsel has proffered. The actual language of the relevant sentence reads as follows:

> Where a term of years is granted for a gross rent without specification as to the time of payment, the common-law rule is that the rent does not become due and payable until the end of the term, and that where by the contract the rent is payable either yearly, half-yearly, quarterly, monthly, or weekly, and there is no provision for payment at any particular time during such periods, either expressly made or to be gathered by necessary implication from the acts and circumstances of the parties or by custom or usage in the community, the rent is not due and payable until the end of those respective periods.

49 *Am Jur 2d* 584, *Landlord and Tenant* § 713 (1995) (footnotes omitted). It is readily apparent

that this rule applies to an express lease agreement for a specific lease term, such as a lease for one year with no payment date for the rent being provided for. In such an arrangement it is clear that no rent is due until the end of the year and therefore none has "accrued" until that time has arrived. Accordingly, if the property is sold during that year and no express agreement otherwise is made, the owner of the property at the time the rent does become due is the party entitled to collect it. That, however, is not the situation presented in this case. The problem here was not just that the parties couldn't agree upon or didn't provide for when rent would be due under a lease agreement following any failure of the contract of purchase and sale, they were unable to agree upon any specific term of lease or rent payable during that term, much less when any such rent would be due and payable. While the general rule is that a vendee who enters upon property pursuant to a contract of purchase does not create a landlord and tenant relationship with the seller, 77 *Am Jur 2d* 345, *Vendor and Purchaser* § 319 (1997), and therefore is not liable for rent for use and occupation of the premises, *Id.* at 346, § 321, that rule relates to an asserted <u>implied</u> promise to pay rent in an <u>express</u> contract of sale. In the case before the Court it is significant that the contract of sale expressly provided that the purchaser would pay "daily rent" in specified amounts until closing after it "[took] over" the possession and control of the two convenience stores. While it is certainly true that such payments were to be credited against the $195,000 balance of the purchase price due at closing, the parties expressly agreed that such payments would be denominated as "rent". They easily could have done otherwise by simply providing that the purchaser would advance to Lambert Oil each month the current payments due upon the two mortgages and equipment lease until closing and receive a credit at closing for such interim payments or a refund if the transaction failed to close. The Court will certainly not assume that a

contract drafted by Quality's own counsel used the term "rent", a very common one in both everyday speech and legal terminology, without a good understanding by the involved parties of the legal significance of that term. Under the circumstances presented here where Quality or its affiliate, MEO, entered into possession of the premises subject to an express obligation to pay "daily rent" and in fact did pay such rent monthly for five months or more, the Court concludes that the proper rule to apply for that period of time following the termination or effective abandonment of the contract by the parties is the same one applicable to a tenant who enters into possession and pays rent under an invalid lease, which thereby creates a periodic tenancy with the period of tenancy being determined by the interval between rental payments. *See Kent v. Humphries*, 303 N.C. 675, 281 S.E.2d 43, 46 (1981); *Annot.*, Character and Duration of Tenancy Created by Entry Under Invalid or Unenforceable Lease, 6 A.L.R.2d 685, §§ 7 - 17 (1949); 49 *Am Jur 2d* 130-31, *Landlord and Tenant* § 113 (1995); Restatement (Second) of Property, Landlord and Tenant § 2.3(d) (1977). It is sufficient for the purpose of ruling upon the pending Motion to conclude that at the least an obligation to pay rent in some amount for every month preceding the month in which the closing of the Trustee's sale occurred "accrued" prior to the conveyances of the two stores by the Trustee. The evidence before the Court at this point does not disclose the actual practice of the payment of the "daily rent" for the period of time during which such payments were made, such as the date or dates of the month in which such payments were made and whether they were paid in advance or in arrears. Such evidence should make it possible for the Court to determine what non-accrued rent, if any, for any portion of the month in which closing occurred passed to the grantees in the Trustee's deeds of conveyance.

Count 2 of the Amended Complaint might be described as a protective or safeguard count seeking reformation of the deeds to expressly reserve to the Trustee any claims for compensation for pre-closing use and occupancy of the premises. While the Court's ruling as to Count 1 may make Count 2 superfluous or largely so, such may not be the case, either with respect to non-accrued pre-closing rent or in the event either the Court reaches a different result at trial than upon the Motion now before it or its ruling is reversed on appeal. In any event it is sufficient at this point to observe that what the mutual intent and understanding of the parties was at the time of the Trustee's sale of two convenience stores concerning the subject of Quality or MEO's responsibility for compensation for nearly two years of uncompensated enjoyment of Lambert Oil's stores has not been stipulated by the parties or otherwise demonstrated to be not in dispute. In fact such issue is yet to be resolved and the evidence offered by the defendants certainly does not show anything different. Accordingly, the Motion as to this Count must fail because it does not satisfy the requirement of Rule 56 that there be no "genuine issue as to any material fact" as to such count.

Before leaving this subject, however, the Court will evaluate the defendants' argument that the added language to section 2.2 of the Asset Purchase agreement dated June 2, 2004 between the Trustee and Quality did not have the effect ascribed to it by the Trustee. In summary, the defendants argue that this section dealt with the purchaser's non-responsibility for Lambert Oil's liabilities and did not constitute a reservation of the right to collect pre-sale rent, which word was not used in such provision, and did not limit the rights and property interests being conveyed by the Trustee pursuant to such Agreement. It is true that the language in question did not expressly provide either that Quality would be liable for pre-sale rent or that the

Trustee reserved the right to seek recovery of such rent from it. To understand why the language was added in the first place, however, requires an analysis of the language which such section contained prior to its amendment. That language, which immediately preceded the sentence added by the Amendment, provided in part, "Purchaser is not a successor to Seller for any purpose and shall not be liable for any claim related thereto, including but not limited to . . . (g) any claims, liabilities and obligations of any kind resulting from the ownership **or use of the Purchased Assets or the operation of the Business, to the extent same are attributable to any period prior to the Closing Date . . . .**" (emphasis added). If such language had been left in without the modifying provision that such "exclusion of liability . . . shall not operate as a discharge or release of any liability incurred by the Purchaser as a result of the Purchaser's occupancy and use of the Purchased Assets", the defendants would have a very powerful argument indeed that the parties had agreed that the sale would constitute an accord and satisfaction of the Trustee's various claims against the purchaser and thereby eliminate any claim for pre-closing rents. Such amending language was added at the request of counsel for FMAC, pursuant to a provision of the mortgage providing it an assignment in any rents from the property securing its obligation, and it seems quite extraordinary to assert after closing that this language was intended by the mortgagee or understood by the purchaser to be for any purpose other than the protection of such party's claims to such rents.

Next, the Court will reject the defendants' suggestion that to permit the Trustee to make a claim against any of them for pre-purchase rents is at odds with this Court's action approving the sale of the stores "free and clear" of any liens or claims. Such language has nothing to do with liability for use and occupation of these stores by any of the purchasers prior

to the sale, which liability they would have continued to have had if the Trustee had sold the stores to Rogers Petroleum, and when Quality and MEO decided to enter upon the playing field of competitors for the purchase of such stores, they did it on the same basis as any other possible purchaser and not with any advantage of being able both to purchase the stores and also eliminate the Trustee's claims for pre-sale rents in one fell swoop. In short, the language of this Court's order pursuant to the Trustee's Motion provided the same protection to Quality and MEO as any purchaser of the stores from liabilities associated with acquisition of ownership of the properties, but no more.

Finally, the Court is not persuaded that there is any reason to stay the determination of this proceeding until the nature of FMAC's security interest in any pre-petition rent is determined so long as the defendants are not subjected to the possibility of multiple claimants for the same rent. Accordingly, such request is denied, but if the Trustee does not file with this Court within fifteen (15) days a certification from FMAC (and GMAC if applicable) that it will deem itself bound by the final judgment in this adversary proceeding, the defendants by a separate order will be granted leave of court to file a third party complaint within fifteen (15) additional days as may be necessary to relieve them from apprehension of the possibility of multiple litigation claims for the same claims advanced by the Trustee in this proceeding.

## CONCLUSION

For the reasons noted above the Court by a separate order will deny the Motion for Summary Judgment, deny the request to stay this proceeding and set this adversary proceeding down for a final pre-trial conference.

This 8th day of May, 2006.

_____
UNITED STATES BANKRUPTCY JUDGE